IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALBERTO DOUGLAS SANCHEZ, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. 1:24-CV-00874-DAC <br><br> MAGISTRATE JUDGE DARRELL A. CLAY <br><br> MEMORANDUM OPINION AND ORDER |

### INTRODUCTION

Plaintiff Alberto Sanchez challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). This Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On May 16, 2024, under Local Civil Rule 72.2, this matter was referred to me to prepare a Report and Recommendation. (Non-document entry dated May 16, 2024). Then all parties consented to my exercising jurisdiction under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF #11). Thus, on October 10, 2024, this matter was re-assigned to me for disposition. (Non-document entry of Oct. 10, 2024). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision.

### PROCEDURAL BACKGROUND

Mr. Sanchez filed for DIB in November 2015, alleging a disability onset date of May 14, 2011.[1] (Tr. 119). After his claims were denied initially and on reconsideration (Tr. 119-27, 128-38),

---

[1] Mr. Sanchez's application declared a disability onset date of October 24, 2012. (*See* Tr. 317). Because the ALJ's decision and the disability determination exhibits all reference a disability onset date of May 14, 2011(*see* Tr. 119, 128, 2459), I treat that date as controlling.

1

he requested a hearing before an Administrative Law Judge (Tr. 172-73). Mr. Sanchez (represented by counsel) and a vocational expert (VE) testified before the ALJ who ultimately determined Mr. Sanchez was not disabled. (Tr. 36-77, 140-53). The Appeals Council granted Mr. Sanchez's subsequent request for review, vacated the ALJ's decision, and remanded the case for the ALJ to resolve errors identified in the Appeals Council Order. (Tr. 156-57).

After a second hearing, the ALJ again determined Mr. Sanchez was not disabled. (Tr. 7-24). The Appeals Council denied his request for review. (Tr. 1-6). Mr. Sanchez appealed the decision to this Court which remanded the case to the Appeals Council for additional proceedings (Tr. 1197-98; *see also Sanchez v. Comm'r of Soc. Sec.*, No. 1:20-cv-1536, 2021 WL 5866989 (N.D. Ohio Dec. 9, 2021)). On March 25, 2022, the Appeals Council vacated the ALJ's decision and ordered the ALJ to hold further proceedings consistent with this Court's order. (Tr. 1224).

The ALJ held a third hearing and again determined Mr. Sanchez was not disabled. (Tr. 1131-72). Mr. Sanchez appealed that decision to this Court. (*See Sanchez v. Comm'r of Soc. Sec.*, NDOH Case No. 1:22-cv-2270). This Court granted the parties' Joint Stipulation to Remand and returned the matter for further proceedings. (Tr. 2523). The Appeals Council then vacated the ALJ's decision because the ALJ did not evaluate adequately Mr. Sanchez's residual functional capacity (RFC) and ordered the ALJ to make that determination. (Tr. 2526).

The ALJ held a fourth hearing in December 2023 (Tr. 2482-99) and, on February 20, 2024, determined Mr. Sanchez was not disabled (Tr. 2456-81). Mr. Sanchez did not file exceptions disagreeing with the hearing decision and the Appeals Council did not otherwise assume jurisdiction over the matter, making the February 2024 hearing decision the Commissioner's final decision. *See* 20 C.F.R. § 404.984(a).

2

**FACTUAL BACKGROUND**

I.   **Personal and Vocational Evidence**

Mr. Sanchez was 57 years old on the alleged onset date and 62 years old at the expiration of his date last insured. (Tr. 119). He attended high school in Cuba but did not graduate. (Tr. 107). Mr. Sanchez previously worked as a landscape laborer and factory machinist. (Tr. 380).

II.  **Relevant Medical Evidence**[2]

On January 12, 2012, Mr. Sanchez met with Rajesh Sharma, M.D., for evaluation. (Tr. 448). There, he described a two-year history of moderately severe knee degenerative joint disease, worse in the right knee. (*Id.*). Mr. Sanchez denied swelling, redness, and effusions, and reported that NSAIDs have worked best for the pain. (*Id.*). Dr. Sharma instructed Mr. Sanchez to apply heat and refilled his prescription for Daypro, an NSAID. (Tr. 450).

On August 14, 2012, Mr. Sanchez returned to Dr. Sharma's office for a follow-up appointment. (Tr. 452). He described mild discomfort, improved knee joint symptoms, and rated his overall quality of life as "much better." (*Id.*). He denied associated symptoms of swelling, redness, and effusions. (*Id.*). Physical examination of his right knee revealed crepitus at the joint line. (Tr. 453). Dr. Sharma recommended applying heat. (Tr. 454).

Mr. Sanchez was incarcerated from November 2012 (Tr. 805) to September 2015 (Tr. 460). Upon incarceration, he reported a medical history of arthritis. (Tr. 701, 705). An initial physical examination showed crepitus in both knees, for which Mr. Sanchez received a short course of Naprosyn. (Tr. 704). He first received a year-long restriction to a bottom bunk bed, set to expire on

---

[2]   Mr. Sanchez challenges the ALJ's assessment of his knee pain stemming from degenerative joint disease so my summary of the medical evidence is limited to that impairment.

3

November 14, 2013. (Tr. 750). On December 19, 2012, Mr. Sanchez requested medical care for arthritic pain in his legs. (Tr. 761). On December 24, 2012, he was seen for a musculoskeletal evaluation, after which the nurse ordered Naprosyn and advised Mr. Sanchez to rest the involved joint. (Tr. 586-87). The nurse indicated Mr. Sanchez was not otherwise restricted from any activity resulting from his knee pain. (Tr. 587). On December 28, 2012, he received a short-term restriction (less than 6 months) to a bottom bunk bed due to his history of arthritis. (Tr. 752).

In January 2013, after Mr. Sanchez complained of bilateral knee pain (Tr. 613), X-rays showed normal joint spaces without effusion or fracture (Tr. 685-86). In August 2014, Mr. Sanchez sought medical care for right foot and ankle pain. (Tr. 578, 746). On April 28, 2015, Mr. Sanchez requested another restriction to a bottom bunk because of a prior stomach operation, leg arthritis, and his age. (Tr. 725). During his medical appointment the next day, Mr. Sanchez reported difficulty using the top bunk and physical examination revealed a steady, slow gait with normal range of motion and decreased muscle strength in the legs. (Tr. 575). On May 1, 2015, he received a one-year restriction to a low bunk. (Tr. 722). On September 18, 2015, he reported no complaints during his follow-up appointment for HIV and hypertension and physical examination was normal. (Tr. 536).

On March 17, 2016, Mr. Sanchez met with infectious disease specialist Jennifer A. Hanrahan, D.O. for an HIV-related follow-up appointment. (Tr. 841). There, he requested a knee X-ray to evaluate osteoarthritis. (*Id.*). That X-ray of the right knee showed a normal patellofemoral joint. (Tr. 844). On March 23, 2016, Mr. Sanchez complained of pain behind the right knee with exertion, especially with climbing steps. (Tr. 872). The doctor observed cystic swelling behind the right knee and varicose veins in the right leg and ordered a vascular lower venous duplex scan.

4

(Tr. 873-74). On March 30, 2016, vascular testing was normal except for a small cyst located behind the right knee. (Tr. 864-65).

**III.    Medical Opinions**

On January 19, 2016, state agency medical consultant Gerald Klyop, M.D., reviewed Mr. Sanchez's medical records and determined he was not disabled between May 4, 2011 and September 30, 2015, the date last insured. (Tr. 122-26). Dr. Klyop noted Mr. Sanchez's allegation of knee arthritis but concluded his knee impairment was not severe and did not pose functional limitations because his knee X-rays were normal and his most recent examination in April 2015 showed a slow, steady gait. (Tr. 125). On May 23, 2016, state agency medical consultant Theresa March, D.O., offered the same conclusions on reconsideration. (Tr. 135-36).

On October 10, 2017, infectious disease specialist K.V. Gopalakrishna, M.D., completed a medical source statement on Mr. Sanchez's behalf. (Tr. 982-85). Dr. Gopalakrishna saw Mr. Sanchez every three months to evaluate his HIV infection. (Tr. 982). He noted Mr. Sanchez did not have symptoms at the time of the report, did not display obvious abnormal findings on physical examination, and denied adverse effects from his medications. (*Id.*). Dr. Gopalakrishna concluded he could not assess Mr. Sanchez's functional limitations in a competitive work situation. (Tr. 983).

On November 8, 2018, more than three years after the expiration of the date last insured, Brett Balis, PT, DPT, completed a functional capacity evaluation and reported Mr. Sanchez demonstrated the ability to perform medium exertion work but needed to alternate between sitting and standing. (Tr. 1099). Testing showed an occasional tolerance for bending, fine coordination,

5

pinching, simple grasping, and walking; frequent tolerance for forward reaching and gross coordination; and no tolerance for static balance, firm grasping, squatting, and stair climbing. (*Id.*).

**IV.    Relevant Testimonial Evidence**

At the first hearing in 2017, Mr. Sanchez reported knee pain that worsens with changes in weather. (Tr. 60). His doctor advised him to continue his medications and use a knee brace. (*Id.*). The medication helps sometimes but the knee brace does not reduce his pain. (*Id.*). He testified that his legs bother him if he sits too long or walks for ten to fifteen minutes. (Tr. 49). When he was incarcerated, his only job assignment was cleaning tables. (Tr. 57).

The VE identified Mr. Sanchez's past relevant work as a landscape helper (heavy exertion as generally performed, light exertion as actually performed), production welder (medium exertion as generally performed, light as actually performed), and hand packager (medium exertion as generally and actually performed). (Tr. 68-69, 75). The VE then testified that a person of Mr. Sanchez's age, education, and work experience, could, with additional limitations, perform as a hand packager but not as a production welder or landscape helper. (Tr. 69-70). Those additional limitations included never climbing ladders, ropes, or scaffolds; avoiding concentrated exposures to hazards; and only frequently kneeling and crawling. (Tr. 69). If, in addition to those identified limitations, Mr. Sanchez was limited to lifting 20 pounds occasionally and 10 pounds frequently, standing and walking six hours in an eight-hour workday, unlimited pushing and pulling, and occasionally climbing ramps and stairs, stoop, kneel, crouch, and crawl, he would be unable to perform any past relevant work. (Tr. 70, 75-76).

At the second hearing in 2019, Mr. Sanchez reiterated that his knees feel better in warm weather and worse in cold weather. (Tr. 103). Some days, he is in so much pain he does not want

6

to get out of bed. (Tr. 103-04). The VE identified Mr. Sanchez's past relevant work as a machine feeder (medium exertion as generally and actually performed), a landscape laborer (heavy exertion as generally and actually performed), and welding machine tender (medium exertion as generally and actually performed). (Tr. 110-111). The VE determined that machine feeder was a more appropriate job title than hand packager because Mr. Sanchez was "actually tending to the machine and inputting" material; but the VE acknowledged that machine feeder and hand packager require the same physical demands. (Tr. 110). The VE then testified that a person of Mr. Sanchez's age, education, and work experience, and with same additional limitations identified in the first hearing—never climbing ladders, ropes, or scaffolds; avoiding concentrated exposures to hazards; and frequently kneeling and crawling—could not perform any of Mr. Sanchez's past relevant work. (Tr. 112). The VE identified three medium exertion positions such an individual could perform: linen room attendant, dining room attendant, and counter supply attendant. (Tr. 113).

At the third hearing in 2022, the ALJ informed the VE of Mr. Sanchez's past relevant work identified at the 2019 hearing and asked if a hypothetical individual could perform that work if limited as follows: frequently kneel and crawl; never climb ladders, ropes, or scaffolds; unlimited pushing and pulling; and avoiding hazardous machinery (defined as no operating power saws or jackhammers). (Tr. 1165-66). The VE testified the hypothetical individual could perform as a machine feeder or welding machine tender. (Tr. 1166-67). The ALJ noted that the VE in the second hearing testified a hypothetical individual under those same restrictions could not perform those jobs and asked how the VE here came to a different conclusion. (Tr. 1167). The VE suggested "maybe [the former VE was] thinking that just working on machines is exposure to

7

hazards." (*Id.*). The VE also testified that if the hypothetical individual were exposed to heavy material-handling equipment (such as a crane) for up to a third of the workday, he could not perform any past relevant work but could perform as a counter supply attendant, kitchen helper, and laundry worker II. (Tr. 1170-71).

At the fourth hearing in 2023, Mr. Sanchez testified about pain in his knees during the period at issue, left greater than right, his restriction to a lower bunk, and restriction while incarcerated from working. (Tr. 2493-94). The ALJ identified Mr. Sanchez's past relevant work as a machine feeder, landscape laborer, and welding machine tender, all medium exertion jobs. (Tr. 2490). The ALJ asked the VE if a hypothetical individual could perform that work if limited as follows: lifting and carrying 25 pounds frequently and 50 pounds occasionally; frequently kneel and crawl but never climb ladders, ropes, or scaffolds; pushing and pulling with the upper extremities consistent with the carrying and lifting restrictions; and avoiding concentrated exposure to hazards such as hazardous machinery, including power saws, jackhammers, and unprotected heights. (Tr. 2495). The VE testified the individual can perform as a machine feeder and welding machine tender. (Tr. 2495-96). An individual could not perform that past relevant work if the individual needed to alternate between standing for 45 minutes and sitting for 15 minutes at a time. (Tr. 2496).

## STANDARD FOR DISABILITY

Eligibility for benefits depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

8

than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### THE ALJ'S DECISION

At Step One, the ALJ determined Mr. Sanchez had not engaged in substantial gainful activity during the period from his alleged onset date of May 14, 2011, through his date last insured. (Tr. 2461). At Step Two, the ALJ identified HIV as Mr. Sanchez's sole severe medically

9

determinable impairment. (Tr. 2462). At Step Three, the ALJ determined this impairment did not meet or medically equal the severity of Listing 14.11 (HIV infection). (Tr. 2465).

Before Step Four, the ALJ determined Mr. Sanchez's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he could lift and carry up to 50 pounds occasionally and 25 pounds frequently. He could frequently kneel and crawl, but never climb ladders, ropes, or scaffolds. He could engage in unlimited pushing and pulling, consistent with the lifting and/or carrying limitations. He should avoid concentrated exposure to hazards such as hazardous machinery and unprotected heights. Define concentrated as frequent or up to 2/3 of the day. Hazardous machinery would include things such as power saws and jackhammers.

(*Id.*). At Step Four, the ALJ determined Mr. Sanchez could perform his past relevant work. (Tr. 2473). Therefore, the ALJ concluded Mr. Sanchez was not disabled between May 4, 2011 (the alleged onset date) and September 30, 2015 (the date last insured). (*Id.*).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole.

10

Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

Along with considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000,

11

2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## DISCUSSION

I first note that Mr. Sanchez's earning record shows he acquired sufficient coverage to remain insured through September 30, 2015. (*See* Tr. 2460). Thus, consideration of Mr. Sanchez's claim for DIB is limited in time from May 14, 2011 (the alleged onset date) to September 30, 2015 (the date last insured). To be entitled to DIB, Mr. Sanchez must show he was disabled before September 30, 2015. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984).

Mr. Sanchez challenges the ALJ's findings about his knee pain stemming from degenerative joint disease. First, he argues the ALJ did not comply with this Court's or the Appeals Council's orders on remand because the ALJ "failed to consider his testimony regarding his subjective symptoms during the relevant period of time." (ECF #8 at PageID 3098-3100). He also argues the ALJ erred in concluding his degenerative joint disease was not a severe impairment at Step Two. (*Id.* at PageID 3101-06). Next, Mr. Sanchez asserts substantial evidence does not support the ALJ's determination that he can perform his past relevant work. (*Id.* at PageID 3106-10). Last, he argues the ALJ did not evaluate the medical opinions properly. (*Id.* at PageID 3110-11). The Commissioner responds that the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's evaluations of Mr. Sanchez's knee pain, his RFC, and the medical opinions. (ECF #10).

**I. The ALJ considered Mr. Sanchez's knee pain as required by the remand order.**

After the district court granted the joint stipulation to remand the matter to the Commissioner, the Appeals Council remanded the case to the ALJ. (Tr. 2526). In its remand order, the Appeals Council noted the decision did not consider Mr. Sanchez's knee pain and ordered the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity regarding the claimant's non-severe knee pain and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." (*Id.*). According to Mr. Sanchez, the ALJ did not comply with that order because the ALJ did not consider his testimony about pain in both knees and he was "not allowed to do anything while in prison per doctor's orders." (ECF #8 at PageID 3100).

When the Appeals Council issues a remand order to an ALJ, the ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). When a remand order contains instructions concerning the scope of the remand and the issues to be addressed, "further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith [are] error." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967); *see also Kaddo v. Comm'r of Soc. Sec.*, 238 F.Supp.3d 939, 944 (E.D. Mich. 2017) ("[T]he failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court. This holds true regardless of whether substantial evidence otherwise supports the Commissioner's final decision.").

As ordered by the Appeals Council, the ALJ considered Mr. Sanchez's knee pain and explained her conclusions with specific references the administrative record. The ALJ first addressed Mr. Sanchez's knee pain at Step Two of the sequential analysis. There, the ALJ considered whether Mr. Sanchez's degenerative joint disease was a severe impairment. (Tr. 2462). The ALJ explained that while Mr. Sanchez's testified his arthritic knee pain made standing difficult, the objective medical evidence and his physical examinations do not support those statements. (Tr. 2462). The ALJ cited that in January 2012, Mr. Sanchez received medication for knee pain but by August 2012 he reported improved joint symptoms, described as mildly uncomfortable, and stated he no longer took the medication. (Tr. 2463). And in November 2012, when Mr. Sanchez was incarcerated, crepitus was noted on initial examination, but he had a normal gait and denied musculoskeletal complaints. (*Id.*). During his period of incarceration, Mr. Sanchez requested and received a restriction to a lower bunk but was not otherwise restricted from lifting, standing, sitting, laying, attending programming, or any other activities. (*Id.*).

Mr. Sanchez contends the ALJ did not consider that he was on medical orders not to work while imprisoned, but the ALJ noted at Step Two that at the 2022 administrative hearing, Mr. Sanchez acknowledged he did not receive work assignments in prison due to his HIV status, not because of knee pain. (Tr. 2463-64). Additionally, Mr. Sanchez was physically examined monthly for HIV monitoring and those examinations revealed during that time he had full range of motion, normal strength and sensation, and a steady gait. (Tr. 2463). The ALJ noted Mr. Sanchez presented with a limp one time but reasonably determined it was caused by acute right foot pain that resolved. (*Id.*). The ALJ pointed to a treatment note dated October 2015, one month after the

14

expiration of the date last insured, where Mr. Sanchez did not report joint pain. (Tr. 2464). Finally, a knee X-ray dated March 2016 was normal. (*Id.*).

The ALJ also followed the Appeals Council's order to consider Mr. Sanchez's knee pain in forumalating his RFC. Before proceeding to Step Four of the sequential analysis, the ALJ offered the following:

> The undersigned has also considered the effects of the claimant's nonsevere knee degenerative joint disease in assessing the claimant's maximum residual functional capacity for the period when he met insured state requirements. Viewing the evidence in the light most favorable to the claimant, the claimant's degenerative joint disease of the knees would cause some degree of limitation. However, these limitations are adequately compensated for in the reduced range of medium work restrictions set forth in the claimant's residual functional capacity. Limiting the claimant any further is not warranted by the objective evidence of record. X-rays of the claimant's knee were normal. A 2012 request for a bottom bunk does not appear to have been granted on a permanent basis. The claimant was granted a bottom bunk in 2015, but there are not objective findings accompanying this grant, and there were notably no restrictions on sitting, standing, or lifting. At a treatment encounter in October 2015, the month following his date last insured, the claimant denied joint pain. On examination, the claimant presented with a normal gait and a full range of motion and strength in his extremities. His symptoms improved with the administration of anti-inflammatories. As such, prior to the date last insured, the medical evidence does not support any further physical limitations.

(Tr. 2468) (citations omitted).

Based on the above, it is clear the ALJ considered Mr. Sanchez's statements about his knee pain when assessing the RFC and explained her conclusions with specific references the administrative record all as required by the Appeals Council's remand order. I therefore decline to remand on this basis.

II. **Any error in the ALJ's findings at Step Two would not be reversible error in light of the ALJ's fulsome analysis at Step Four.**

Mr. Sanchez next argues the ALJ erred at Step Two by determining his knee impairment was not severe:

15

> During the most recent hearing, [he] testified that during the relevant period of time, he had pain in both knees, more on the left. He was not allowed to do anything while in prison per doctors orders, he was restricted. Thus, the ALJ erred when she failed to find that the degenerative joint disease of the knee is a severe impairment. Social Security Ruling 96-8p states that pain, as a related symptom, should be considered. Even the ALJ wrote that [Mr. Sanchez] alleged arthritic pain which made it difficult for him to stand. Based on the cumulative testimony and evidence in this matter, the record is unclear if Plaintiff's pain was considered in formulating the RFC.

(ECF #8 at PageID 3104).

At Step Two, the ALJ must determine whether the claimant has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). Step Two represents "a *de minimis* hurdle" in the sequential analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (italics in original). A "severe impairment" is one having "more than a minimal effect" on the claimant's ability to do basic work activities. Soc. Sec. Ruling (SSR) 85-28, 1985 WL 56856, at *3. If the ALJ finds even one alleged impairment is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. Therefore, even if the ALJ errs by failing to find a particular impairment is severe at Step Two, the error would be harmless if the ALJ considers all the individual's impairments in the remaining steps of the disability analysis. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

As described in the previous section, the ALJ thoroughly explained why Mr. Sanchez's degenerative joint disease was not severe at Step Two and, at Step Four, the ALJ explicitly considered the effects of that non-severe impairment when assessing his RFC. I thus decline to order remand on this basis because even were I to conclude the ALJ erred in finding degenerative joint disease was not severe, any error would be harmless in light of the ALJ's fulsome evaluation of the effects of Mr. Sanchez's knee pain on his RFC.

16

**III.     Substantial evidence supports the ALJ's finding that Mr. Sanchez can perform his past relevant work.**

Mr. Sanchez next claims the ALJ erred at Step Four in concluding he could perform his past relevant work during the period at issue. As best I can discern from his brief, Mr. Sanchez believes the ALJ's finding is not supported by substantial evidence because two VEs analyzing the same set of functional limitations came to differing conclusions about his ability to perform past relevant work. (*See* ECF #8 at PageID 3109) ("Whereas Petkoff stated that Plaintiff could perform his past work, the prior vocational witness opined that restriction regarding hazards would preclude Plaintiff from performing his past relevant work."). Accordingly, Mr. Sanchez argues the ALJ's RFC is not supported by substantial evidence. My review of the administrative hearing transcripts shows this is not the case.

As described above, the VE at the 2022 hearing testified an individual could perform Mr. Sanchez's past relevant work even if limited to lifting and carrying 50 pounds occasionally, 25 pounds frequently; frequently kneeling and crawling, but never climbing ladders, ropes, or scaffolds; unlimited pushing and pulling with the upper extremities; avoiding concentrated exposure to hazards, defined as no operating power saws or jackhammers. (Tr. 1166-67). All these limitations were ultimately included in Mr. Sanchez's RFC. (*See* Tr. 2465). Only after the ALJ asked the VE to consider another restriction that the individual could not be exposed to "heavy material-handling equipment such as a crane, and no operating of dangerous moving equipment such as power saws and jackhammers" did the VE find the individual could not perform Mr. Sanchez's past relevant work. (*See* Tr. 1168-69). The restriction on material-handling equipment was not included in the RFC.

17

The VE at the 2023 hearing testified an individual could perform Mr. Sanchez's past relevant work if limited to lifting and carrying 50 pounds occasionally, 25 pounds frequently; frequently kneeling and crawling, never climbing ladders, ropes, or scaffolds; pushing and pulling with the upper extremities consistent with lifting and carrying limitations; avoiding concentrated exposure (defined as frequent up to 2/3 of the day) to hazards such as hazardous machinery (defined as power saws and jackhammers) and unprotected heights. (Tr. 2495). These were materially the same limitations as in the 2022 hearing and in the RFC. (*Compare* Tr. 1166-67 *with* Tr. 2495 *and* Tr. 2465). Plainly, both VEs testified an individual subject to the restrictions in the RFC can perform Mr. Sanchez's past relevant work. Because Mr. Sanchez has failed to identify an error at Step Four, I decline to remand on that basis.

Mr. Sanchez presents a follow-on argument of error at Step Five. (*See* ECF #8 at PageID 3107). But given my determination the ALJ did not err at Step Four, meaning Mr. Sanchez was not disabled during the relevant period, the Step Five argument is moot. I therefore find no need to address its merits.

**IV.** **Substantial evidence supports the ALJ's evaluation of the state agency medical consultants' opinions.**

Last, Mr. Sanchez claims the ALJ "erroneously assessed the medical opinions," but offers little supporting argument. (ECF #8 at PageID 3110-11). Mr. Sanchez notes the ALJ gave only some weight to the functional limitations PT Balis opined in the functional capacity evaluation report and, in contrast, gave considerable weight to Dr. Gopalakrishna's opinion because "it comported with her desired conclusion." (*Id.*). This is the extent of his argument as it relates to those medical opinions. Issues "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See McPherson v. Kelsey,* 125 F.3d 989,

18

995-96 (6th Cir. 1997). Mr. Sanchez provides no meaningful analysis arguing why the ALJ's determination rises to reversible error and thus has waived this issue.

Mr. Sanchez also claims the ALJ erred in her assessment of the state agency medical opinions because they were offered without consideration of later submitted "new and material evidence documenting the fact that [he] had limitations related to his degenerative joint disease of the knees." (ECF #8 at PageID 3111). True, the state agency medical consultants did not have the benefit of reviewing medical evidence submitted after May 2016. (*See* Tr. 119-38). But Mr. Sanchez's DIB claim is limited to the period between May 4, 2011 (the alleged onset date) and September 30, 2015 (the date last insured). Evidence of disability obtained after the expiration of insured status is of little probative value. *Strong v. Soc. Sec. Admin.*, 88 F.App'x 841, 845 (6th Cir. 2004). Medical evidence from after a claimant's expiration of insured status is only relevant to a disability determination where the evidence "relates back" to, or reflects, the claimant's limitations before the date last insured. *Barnett v. Sec'y of Health & Hum. Servs.*, 812 F.2d 1406, *3 (6th Cir. 1987) (table). Mr. Sanchez does not direct me to medical evidence acquired after expiration of his insured status that "relates back" to his limitations before September 30, 2015, but simply claims the ALJ's reliance on the state agency medical consultants' opinions "was neither supported by the medical documentation in this matter nor consistent with the evidence set forth throughout this brief." (ECF #8 at PageID 3111). Looking elsewhere in Mr. Sanchez's brief, I note references to medical evidence dated about six months after his date last insured that show he reported pain in his knees, right worse than left, and for the first time in his medical history the doctor observed cystic swelling behind the right knee with varicose veins. (*Id.* at PageID 3102). During the relevant period, Mr. Sanchez complained of bilateral knee pain, left worse than right, and no doctor

19

observed edema, swelling, or other observable abnormalities at that time. As a result, the evidence post-dating the expiration of insured status relates to new or worsening conditions and does not reflect Mr. Sanchez's limitations before September 30, 2015.

Moreover, as to the relevant time period, substantial evidence supports the ALJ's conclusion that Mr. Sanchez was capable of a limited range of medium exertion work. Knee X-rays were normal, medical providers rarely documented abnormal physical examination findings, he received a medical restriction for a lower bunk but was not otherwise restricted based on his knee pain, and he reported the pain improved with anti-inflammatories. (*See* Tr. 2468). Mr. Sanchez acknowledged that his restriction from work assignments while incarcerated was on account of his HIV diagnosis. (Tr. 2463-64). Mr. Sanchez has not presented any contemporaneous medical evidence of limitations from the relevant time period more restrictive than those encompassed in the RFC. Thus, he fails to carry his burden in proving disability for the relevant time period.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, I find the Commissioner applied the correct legal standards and substantial evidence supports the decision to deny disability insurance benefits. Thus, I **AFFIRM** the Commissioner's decision.

Dated: January 15, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE